IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FARRON RAY JORDAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-0018 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION TO AFFIRM, IN PART, AND TO REVERSE AND REMAND, IN PART

Plaintiff FARRON RAY JORDAN, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED in part, and the case REVERSED and REMANDED in part.

I.
THE RECORD

Plaintiff protectively filed for supplemental security income benefits (SSI) under Title XVI of the Social Security Act on May 31, 2000. (Transcript [hereinafter Tr.] 127). According to plaintiff his disabilities include anxiety, heart problems, breathing problems and arthritis. (Tr. 19).

Plaintiff lists his onset date as May 8, 2000.  (Tr. 92).  It was determined at the administrative

level that plaintiff had not engaged in substantial gainful activity since the date he protectively

filed for SSI benefits.  (Tr. 21).  Plaintiff was born March 20, 1953 (Tr. 92), graduated from high

school and attended one semester of college.  (Tr. 39).  The record reflects plaintiff's past

relevant work includes work as a laborer/construction, millwright, stagehand, and a fork lift

operator. (Tr. 20).

Plaintiff filed a Request for Hearing before an Administrative Law Judge and a hearing

was held on May 10, 2002 before ALJ David R. Wurm.  (Tr. 34-66).  On July 18, 2002, ALJ

Wurm rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time

relevant to the decision.  (Tr. 22).  The ALJ determined plaintiff was unable to return to his past

relevant work.  (*Id.*, Finding #7).  The ALJ further found plaintiff to have,

> [T]he residual functional capacity for a range of light exertional level work.  The
> claimant has the following additional limitations: no prolonged walking and
> standing; occasional postural movements; no climbing or working on heights; no
> overhead reaching; avoid extreme temperatures, noise, fumes, chemicals, and
> similar irritants; somewhat limited to public contact and pace due to stress.

(*Id.*, Finding #6).  After hearing from a vocational expert, the ALJ determined plaintiff could

perform a significant numbers of jobs in the national economy including *lens coater*, *surveillance*

*monitor,* and *companion*.  (*Id.*, Finding #11).  The ALJ thus concluded plaintiff was not under a

disability at any time through the date of his decision.

On December 17, 2002, the Appeals Council denied plaintiff's request for review of the

decision of the ALJ, rendering the ALJ's decision the final decision of the defendant

Commissioner.  (Tr. 5-7).  Plaintiff now seeks judicial review of the denial of benefits pursuant

to 42 U.S.C. §405(g).

II.

STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ could have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.

MEDICAL BACKGROUND

On May 8, 2000, plaintiff was diagnosed with acute myocardial infarction at Northwest

Texas Hospital.  (Tr. 174-177).  On May 10, 2000, petitioner had "stint placement to the left

anterior descending artery."  (Tr. 170).  Plaintiff references a cardiac catheterization report dated

December 15, 2000, as support for his claim that he suffers from the required criteria for a listed

impairment.  That cardiac catheterization report reflects plaintiff suffers from approximately 70%

stenosis of a branch of the obtuse marginal artery.  Plaintiff underwent a stress test in October

2000 wherein it was noted, "findings are suggestive of reversible myocardial ischemia in the left

ventricular apex on exercise stress myocardial profusion scan.  No fixed myocardial infarct defects

were identified."  (Tr. 366).  Plaintiff had another heart catheterization in December 2000, (Tr.

355), and underwent another stress test in January 2001.  Plaintiff was treated by his cardiologist,

Dr. Ismaile Abdalla on several occasions following his heart attack.  He continued to be treated by

Dr. Abdalla after the December 2000 heart catheterization, including January 5, 2001, April 25,

2001, October 24, 2001, May 3, 2002, and July 3, 2002.  Plaintiff was also seen and treated by

Dr. Henry Norrid, D.O., and by Dr. ManishikeTrehan, M.D.  The medical records contain

conflicting entries as to the severity and frequency of chest pain, shortness of breath, and

palpitations related to the heart attack.  Plaintiff had not engaged in substantial gainful activity

from the date of his heart attack in May 2000 until the date of the administrative hearing in May

2002.

IV.

MERITS

Plaintiff's brief in support of his application presents the following issues for review:

A.   Whether the ALJ erred when he determined plaintiff did not have a listed impairment;

B.   Whether the finding by the ALJ that petitioner retained the residual functional capacity to perform a limited range of light work was supported by substantial evidence.

A.

Listed Impairment

Plaintiff argues the ALJ erred because he failed to find plaintiff's heart disease met Listing 4.04(C)(1)(b).  Such Listing states,

*Ischemic heart disease,* with chest discomfort associated with myocardial ischemia, as described in 4.00E3, while on a regimen of prescribed treatment (see 4.00A if there is no regimen of prescribed treatment).  With one of the following: ....

C.   Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation), and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual with both 1 and 2:

1.   Angiographic evidence revealing:
   a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
   b. 70 percent or more narrowing of another nonbypassed coronary artery; or
   c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
   d. 50 percent or more narrowing of at least 2 nonbypassed coronary arteries; or
   e. Total obstruction of a bypass graft vessel; and

2.   Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.04 (C)(emphasis added).

As to a listed impairment, plaintiff contends the resultant signs and symptoms required by subsection 2 are shown by plaintiff's testimony and his medical history, but references only two transcript entries, page 43 and page 294. Page 43 refers to chest pain plaintiff suffered when performing heavy physical labor, *i.e.*, lifting a 150 pound overhead door. Plaintiff attempted to lift this door by himself, but acknowledged it required two people to lift it. Plaintiff commented during his testimony (Tr. 43) concerning having a hard time breathing, but attributed his breathing difficulties to the weather and to allergies. The transcript, at 294, is an Amarillo Heart Group history and physical examination of plaintiff performed December 14, 2000. This document recites plaintiff was seen on October 18, 2000 for a six month follow-up, complaining of chest pain, shortness of breath, and palpitations, that he underwent a stress myocardial perfusion scan on October 20, 2000, which revealed reversible myocardial ischemia, and returned to the doctor's office on December 13, 2000, for post-test follow-up complaining of chest discomfort not completely relieved by nitroglycerin, of shortness of breath with exertion, of fatigue, insomnia, palpitations related to stress and exertion, and of increased reflux. To the extent this document constitutes medical evidence establishing plaintiff's symptoms of chest pains, shortness of breath, and palpitations in October and December 2000 following his May 2000 heart attack, this report does not address whether plaintiff meets the remaining requirement of subsection 2, *i.e.*, a marked limitation on physical activity. If other evidence in the record establishes that requirement, plaintiff did not direct the Court to such evidence in his initial brief under his argument relating to a listed impairment.

The defendant in her brief, does not discuss plaintiff's contention that his condition meets

the criteria set forth in Section 4.04(C)(1), and therefore does not appear to challenge it, but does challenge plaintiff's contention he meets subsection 2. In support of her position, defendant cites medical records of December 22, 2000, where plaintiff reported his coronary artery disease was "symptom free." Defendant also recites plaintiff reported an absence of chest pain or shortness of breath on March 23, 2001, and that reports from April and October 2001 were unremarkable for significant cardiac symptoms. In support of these contentions, defendant cites transcript pages 374, 377, 461, and 464. Defendant's brief does not address the issue of whether plaintiff suffers a "marked limitation on physical activity."

Plaintiff, in his reply brief, takes issue with defendant's use of the term "severity," arguing he met the "criteria" of the listed impairment. Review of defendant's answer shows defendant addressed plaintiff's argument, "As hist (sic) first claim of error, Plaintiff contends that his condition meets the criteria set forth in § 4.04(C) of the Listing of Impairments..." (Defendant's Brief at 4). Therefore, it does not appear defendant is attempting to "obscure the issue" but instead, defendant is merely arguing that even if plaintiff met the criteria set forth in § 4.04(C)(1)(b), he would still be required to fulfill the requirements of § 4.04(C)(2).

Plaintiff's reply also challenges defendant's characterization plaintiff was symptom free by December 22, 2000. Plaintiff references page 377 of the transcript and notes the symptom free comment was listed in the record, but did not state "the plaintiff is saying he was symptom free but it was the doctor's plan that he be symptom free." Although page 377 of the transcript is not completely legible, it appears plaintiff is correct. It is noted, however, that under the diagnosis section of the physician notes in this same document, there is an entry that plaintiff no longer has chest pains, but does have complaints of allergies relating to perfumes, causing shortness of

breath.  Plaintiff next cites, in his reply brief, plaintiff's administrative hearing testimony, at the

bottom of page 45 of the transcript.  Plaintiff testified on that page that chest pains occur when he

engages in any physical or stressful exertion and when he is sitting in his house.  To the question,

"would you say that you could be pretty sure that if you exert yourself you would have severe

chest pain," plaintiff did not give a responsive answer.  (Tr. 45-46).  The reply brief did not

address defendant's contention that plaintiff reported an absence of chest pain or shortness of

breath on March 23, 2001, and that the April and October 2001 reports were unremarkable for

significant cardiac symptoms (Defendant's brief, p. 5).

        After consideration of the arguments of both parties as outlined above, as well as the

administrative record, it appears the controlling issue is whether plaintiff met subsection 2 of

Section 4.04(C), which requires that the plaintiff suffer from a <u>marked limitation of physical

activity</u>, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary

physical activity, even though the individual is comfortable at rest.  *See* 20 C.F.R. Pt. 404, Subpt.

P, App. 1 § 4.04 (C).

        Although both parties have argued plaintiff does have and does not have the symptoms of

chest pain, shortness of breath, and palpitations required to meet the listing, neither party has

addressed the question of whether his coronary disease resulted in a marked limitation of physical

activity.

<u>Plaintiff's Treatment History</u>

        As late as June of 2001, plaintiff's treating cardiologist, Dr. Abdalla found plaintiff

unemployable and unable to work because of a physical disability.  The report discloses Dr.

Abdalla did not find sedentary work to be an option.  The report also reflects plaintiff's disability

was considered temporary, but was present from May 8, 2000 to June 8, 2001.  (Tr. 452).  Dr. Abdallah opined plaintiff's prognosis was good and that he needed a stress test to determine if and when he could return to work.

Periodic medical reports prior to the June 2001 report are somewhat inconsistent regarding plaintiff's symptoms.  The records also contain some mention of plaintiff's limitations, but do not meaningfully address them.

Dr. Abdalla's report of May 26, 2000, immediately following the heart attack recites plaintiff's exam was unremarkable, but the report also reflects plaintiff was continued on his medications, that he suffered from chest pain and shortness of breath, and that he was doing "okay, cardiac wise."  (Tr. 358-362).  Plaintiff was not released from treatment, but was to be seen again in three to four months.  Nor did Dr. Abdalla release plaintiff for employment.  He found plaintiff significantly limited in physical activity, *i.e.*, limited to one to two hours sitting and one to two hours standing per day with no walking.  (Tr. 378-379).

Dr. Abdalla next saw plaintiff on October 18, 2000, for a six month follow-up with complaints of chest pain, shortness of breath and palpitations.  Dr. Abdalla also characterized this exam as unremarkable, but continued plaintiff on his medications, did not release him to work, and advised a stress test was necessary to give him a release.  (Tr. 353-357).  The cause of his shortness of breath was not determined and plaintiff was advised to go to the emergency room for chest pains.  (Tr. 351).

An exercise stress test was performed on October 20, 2000.  (Tr. 314).  After that stress test plaintiff was not released to work, and as of November 14, 2000, Dr. Abdalla was of the opinion plaintiff continued to be disabled.  (Tr. 345).

On December 13, 2000, plaintiff was again examined by Dr. Abdalla and reported chest tingling, more on exertion, reported nitroglycerin made the pain tolerable, and reported shortness of breath, wheezing, palpitations, and fatigue all the time.  (Tr. 348-350).

On December 14, 2000, prior to a December 15, 2000 heart catheterization at Northwest Texas Hospital, Dr. Abdalla confirmed plaintiff's prior complaints of chest discomfort, shortness of breath with exertion, fatigue and palpitations.  (Tr. 294).  Symptoms of chest discomfort, shortness of breath and palpitations were recorded.  (Tr. 296).

On January 5, 2001, plaintiff was seen by Dr. Abdalla with complaints of chest tightness and/or pain, but no angina.  Plaintiff also had symptoms of shortness of breath and palpitations. Plaintiff was considered to be doing fairly well.  (Tr. 342).  Again, Dr. Abdalla classified his exam as unremarkable.  Contrary to what was reported above, he stated plaintiff's only complaint was acid reflux.  (Tr. 344).  On April 25, 2001, plaintiff was again seen by Dr. Abdalla with symptoms of chest pain and shortness of breath.  (Tr. 339).

Plaintiff also received treatment from Manishike Trehan, M.D.  In a report dated December 22, 2000, plaintiff was seen for chest pain and complaints of allergies.  (Tr. 377). On March 23, 2001, plaintiff saw Dr. Trehan, but presented no complaints of chest pain, shortness of breath or palpitations.  (Tr. 374).  On May 25, 2001, plaintiff was seen again by Dr. Trehan for chest pain over the last three to four days.  The record reflects a note stating that in April 2001, Dr. Abdalla had advised plaintiff to go to the emergency room for complaints of recurrent chest pain.  Dr. Trehan's notes further reflect plaintiff's chest pain had been relieved by nitroglycerin, that plaintiff did not want to go to the emergency room "today," but would if chest pain recurs.  No palpitations or shortness of breath was documented.  (Tr. 371-373).

The medical records outlined above document plaintiff was severely limited in his physical activity for some extended period after his May 8, 2000 heart attack.  While there are, as pointed out by defendant, certain record entries when some symptoms were reported not to be present, the records of plaintiff's treating cardiologist document that plaintiff was seen over the entire period from May 2000 to June 2001 for complaints of chest pain and shortness of breath, and was never released to work, even for a sedentary job.  It is not at all clear that Dr. Abdalla's classification of plaintiff's examinations as "unremarkable" was any indication that plaintiff was symptom free or physically unlimited.  Although evidentiary conflicts are ordinarily to be resolved by the Commissioner, this case does not present direct conflicts which are readily subject to such resolution.  Instead, the records are more ambiguous in nature.  Further development and/or explanation from plaintiff's treating cardiologist is needed to determine if plaintiff suffered a listed impairment.

Therefore, for several reasons, this case must be remanded for further administrative findings at Step 3 regarding whether plaintiff suffered from an *Ischemic heart disease* listing. First, although the ALJ addressed the issue of a listed impairment,  (Tr. 19), the ALJ opinion did not discuss which of the criteria, if any, the ALJ determined plaintiff met or did not meet.  The only discussion was that the "claimant tested at a workload equivalent to less than 5 MET's on January 22, 2001 (Exhibit 11F, p. 14 and 15).  However, the remaining criteria necessary to meet Listing § 4.04 were not demonstrated."  The discussion or lack of discussion regarding whether plaintiff met a listed impairment might not necessarily be fatal in other cases, where it is clear a claimant is nowhere close to meeting a listed impairment.  In the instant case, however, plaintiff argued the listing issue at the administrative hearing and presented the issue again to the ALJ post-hearing.  Further, the medical evidence, particularly from plaintiff's treating cardiologist,

presents an arguable case for a listed impairment.

Secondly, plaintiff underwent at least two stress tests with results which could support a determination of a "marked limitation on physical activity."  One test in October, 2000 did not result in plaintiff being released for work.  A second stress test in January, 2001, ended after only 2 ½ minutes.

Third, the medical records relied upon to support a finding that plaintiff did not have the requisite symptoms of chest pain, shortness of breath, etc., required for a listing are inconclusive at best.  Many of those records also contain entries documenting such symptoms and/or there are other records, both before and after the cited records, which document symptoms of chest pain, etc.

Fourth, plaintiff's other treating physician, Dr. Norrid, found plaintiff not only disabled, but also at risk.  Certainly the ALJ would be within his adjudicatory province to reject Dr. Norrid's finding based upon Dr. Norrid not being a cardiologist or having not been shown to have any expertise in the area of cardiology, or based upon a determination that Dr. Norrid's opinion was not supported by sufficient objective medical findings or data.  Indeed, that is exactly what defendant has argued in her brief.  It would not, however, be proper to reject Dr. Norrid's opinion solely on the basis that he is a doctor of osteopathy as opposed to a doctor of medicine, unless the ALJ were to also provide reasons why a doctor of osteopathy would be unqualified over a general practitioner or non-cardiologist M.D.  Indeed, the ALJ recites the medical records of Dr. Trehan in support of his determination that plaintiff did not suffer some of the symptoms required to meet a listed impairment.  However, the ALJ offers no explanation as to why Dr. Trehan, who has not been shown to be a cardiologist, is entitled to more credence than Dr. Norrid.  Of course, if Dr. Trehan is a cardiologist, a different situation is presented.

It is the opinion, finding and recommendation of the undersigned Magistrate Judge that the case be remanded on the issue of whether plaintiff suffers a listed impairment, at the very least for a closed period. Additional evidence in this regard should be received and/or developed on remand. This additional evidence might warrant a longer period of plaintiff having a listed impairment or such might warrant a determination that plaintiff suffered no listed impairment. Much of the information necessary for such determination would have to come from Dr. Abdalla who could explain to what degree plaintiff was limited and what symptoms he suffered from during his recovery period.

B.
Plaintiff's Residual Functional Capacity

Plaintiff's second ground avers the finding by the ALJ, that he retained the residual functional capacity (RFC) to perform a limited range of light work, was not supported by substantial evidence. The ALJ determined plaintiff, who suffered from anxiety, heart problems, breathing problems and arthritis, retained the RFC for light work, "with the following additional limitations: no prolonged walking and standing; occasional postural movements; no climbing or working on heights; no overhead reaching; avoid extreme temperatures, noise, fumes, chemicals, and similar irritants; somewhat limited to public contact and pace due to stress." (Tr. 20).

As a preliminary matter, the parties disagree about the Commissioner's burden at Step 5 of the sequential analysis. It appears plaintiff is arguing the defendant must not only identify jobs a claimant is capable of performing but must also identify particular portions of the administrative record to establish the specifics of the RFC found by the ALJ. This "issue" is more semantical than substantive. The Social Security Administration, whether it is during the disability determination process or after a hearing by an ALJ, must determine that claimant's RFC to

determine whether the claimant is able to return to their past relevant work. In this case, the ALJ found the plaintiff had the RFC to engage in a limited range of light work as set forth previously, and that such RFC prevented plaintiff from being able to perform his past relevant work, which was very physical. The ALJ then posed a hypothetical to a vocational expert (VE) incorporating the RFC he had found, and the VE identified jobs which an individual, with the RFC described, could perform. Since the RFC determination was done prior to reaching Step 5, no burden shifting issue at Step 5 is presented. This, of course, does not change the requirement that there must be substantial evidence in the record to support the RFC determination reached, but the burden at Step 5, which shifts to the defendant, is the burden to identify jobs a claimant is capable of performing.

The RFC, age, education, and past work experience of the claimant are to be considered in making this job determination. 20 C.F.R. § 404.1520(f), .1545-.1568. Plaintiff has cited *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980), as support for his argument that the ALJ has the burden to show the claimant possesses sufficient RFC to perform the suggested jobs. The *Johnson* case, however, does not address that specific issue. In *Johnson*, the court reversed the district court's decision to grant the Commissioner summary judgment. The court held, "The vocational expert never gave testimony concerning the availability of jobs for a person <u>with Johnson's educational level and work experience and with the physical limitations the ALJ found Johnson to have</u>." (emphasis supplied) *Id*. at 998. In essence the hypothetical was flawed for it, "assumed claimant had no physical limitations, although there was clear evidence that some such limitations existed." *Id*. citing *Stubbs v. Mathews*, 554 F.2d 1251 (5th Cir. 1977). *Johnson* was reversed because of a faulty hypothetical, not because of a failure to meet a required burden of proof.

If, in fact, plaintiff's complaint is that the RFC determination and thus the hypothetical posed to the VE were flawed, plaintiff has failed to identify any particular aspect of the RFC that does not have evidentiary support, nor has plaintiff identified, in the record, any medical findings which would prohibit plaintiff from performing the RFC found.

The ALJ questioned plaintiff about his age, education and his past work.  (Tr. 39, 41).[1] Plaintiff's attorney questioned him about his medical impairments.  Plaintiff testified he suffered from breathing difficulty and can only walk up to 30 feet[2], has severe allergies, especially to perfumes and colognes, has chest pain related to his heart condition, can't stand for more than an hour and a half, is limited to lifting no more than 20 pounds, needs to work in an environment between 40 and 80 degrees, has arthritis in his neck, elbows and knee, has a plastic eardrum with ringing in his ears, has a limited range of motion in his joints, has cramps and sometimes needs to lie down for a couple of hours at lunch.  (Tr. 43,45- 49, 51).  Plaintiff also testified he can do chores for about fifteen (15) minutes at a time and can do this for two to three hours a day or longer; can unload the dishwasher; can do laundry; can pick up his granddaughter and take her to the amusement park where he sits while she rides the rides; can sit and watch TV for two to three hours a day; can sometimes read for hours; can stand three to four hours during the day; can walk 25 to 30 feet; can sit, but not all day *i.e.* he needs to be able to alternate between sitting and standing; can ride in a car for five to six hours; can lift up to 20 pounds; has trouble reaching and with his grip; and has trouble with fumes and loud noises.  (Tr. 49-54, 286-287).  Plaintiff testified his blood pressure medication makes him drowsy so that he may have to lie down for an

---

[1]Page 40 of the record is missing but from the context it would appear the ALJ continued to question plaintiff about his past relevant work.  Such information is contained elsewhere in the record.

[2]In other portions of the record plaintiff stated he could walk a block.  (Tr. 52).

hour or so, and he has been diagnosed with early asbestosis. (Tr. 55).

On May 26, 2000, just eighteen (18) days after his heart attack, Dr. Abdalla completed an assessment in which he determined plaintiff could stand for 1 to 2 hours a day, sit for 1 to 2 hours a day, could not walk or climb stairs, could occasionally lift up to 20 pounds, but could not lift above 20 pounds. (Tr. 278-279). It was also determined that plaintiff could occasionally bend, squat and kneel, could occasionally reach at the shoulder level or below the waist but not overhead, that he had unlimited hand functions for both hands, however, he had environmental restrictions including dust, heat, cold, damp/wet, fumes and height. (Tr. 279). Finally, although plaintiff was not released to go back to work, it was determined he could engage in training within the functional limitations set forth. (*Id.*).

The VE was called to testify and the ALJ posed the following hypothetical:

[Assume light exertional work] Further limited within that light exertion to having the option or ability to sit down from time to time beyond normal breaks. In other words, essentially light without prolonged being on your feet. Further limited to occasional postural movements, kneeling, bending, stooping, crouching, crawling, and squatting. Precluded from climbing, precluded from overhead reaching but otherwise able to engage in manipulative tasks on a frequent basis, precluded from working in an environment with extreme temperatures, precluded from working at heights, precluded from working in environments with noise, dust, fumes, et cetera, somewhat limited in persistence and pace.

(Tr. 62). It appears from plaintiff's own testimony that he continued to improve from the time Dr. Abdalla completed his RFC in May of 2000. In fact, by June 8, 2001, Dr. Abdalla indicated plaintiff's disability was temporary, that his prognosis was "good," and that he needed a stress test to determine if and when he could return to work. (Tr. 452). By May 3, 2002, plaintiff was able to walk one mile twice a week, (Tr. 460), although in July 2002, plaintiff reported he could walk a block or two. (Tr. 483). The ALJ's RFC finding was consistent not only with Dr. Abdalla's findings, but with plaintiff's testimony. In fact, the ALJ appears to have relied predominately on

the findings of Dr. Abdalla and plaintiff's testimony.

In response to the ALJ's hypothetical, the VE testified such a person would be capable of performing the following jobs: *eyeglass lens cutter*, 95,000 jobs nationally and 50 jobs regionally, *security system surveillance monitor*, 220,000 jobs nationally and 50 jobs regionally, and *companion*, 100,000 jobs nationally and 30 jobs regionally.[3]  The ALJ's determination of RFC is not reversible and is sufficiently supported by the medical evidence of record.  Further, there appears to be a significant number of jobs in the nation/region for such an RFC.  Consequently, plaintiff's second claim fails.

## V.
## RECOMMENDATION

For all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner be REVERSED as to the determination at Step 3 and whether plaintiff suffers from a listed impairment, and the case be REMANDED for further administrative findings at Step 3 consistent with this Report and Recommendation.  It is the further recommendation that the decision be AFFIRMED as to plaintiff's ability to perform substantial gainful activity as found by the ALJ at Step 5.

The determination of not disabled at Step 5 does not override the possibility that a finding of disabled at Step 3 might occur because a determination of disabled at Step 3 would render further proceedings at either Step 4 or Step 5 unnecessary.  If, on remand, it is determined that the evidence does not, in fact, support a finding of disabled at Step 3, then further administrative

---

[3]Given the context of the VE's testimony it would appear he was referring to 50,000 and 30,000 jobs regionally.  In any event, plaintiff has not challenged the VE's testimony and, in fact, indicated at the administrative hearing that he was relying on a finding of disabled at Step 3.

proceedings would not be warranted since plaintiff was found not disabled at Step 5.[4]

## VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to all

counsel of record by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____10th_____ day of March 2006.

_____

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In
the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing
objections is eleven (11) days from the date of filing as indicated by the file mark on the first page
of this recommendation.  Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties
are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e).  Therefore, any objections
must be filed **on or before the fourteenth (14th) day after this recommendation is filed**.  *See*
28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized
by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of
Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report
and Recommendation."  Objecting parties shall file the written objections with the United States
District Clerk and serve a copy of such objections on all other parties.  A party's failure to
timely file written objections to the proposed findings, conclusions, and recommendation
contained in this report shall bar an aggrieved party, except upon grounds of plain error, from
attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and
recommendation set forth by the Magistrate Judge in this report and accepted by the district

---

[4] If, on remand, a closed period of disabled at Step 3 were found, the Secretary's determination of not disabled at Step 5
would appear to control as to the period subsequent to the closed period.

court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).